MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ALEJANDRO ROJAS MARTINEZ,
ASUNCION ALBINO CASTILLO,
BRAULIO MORENO FLORES, ANTONIO
QUIRINO RUIZ, and OBED DOMINGUEZ
GARCIA, *individually and on behalf of others
similarly situated,*

                                 *Plaintiffs*,

             -against-

EAST SIDE PIZZA CORP. (D/B/A LA MIA
PIZZA), PERFECTO PIZZERIA
CORPORATION (D/B/A LUNETTA PIZZA),
MIDTOWN PIZZA CORP.  (D/B/A LA
VERA PIZZA), 52 ST PIZZA CORP. (D/B/A
LITTLE ROMA), RICHARD (A.K.A
RICHIE) ATTIA, HESHAM M. ATTIA,
ABDELLATIF MAHMOUD, and KHAIR
MUHANA,

                            *Defendants.*

--------------------------------------------------------X

            **COMPLAINT**


       **COLLECTIVE ACTION UNDER**
          **29 U.S.C. § 216(b)**


           **ECF Case**

       Plaintiffs Alejandro Rojas Martinez, Asuncion Albino Castillo, Braulio Moreno Flores,

Antonio Quirino Ruiz, and Obed Dominguez Garcia, individually and on behalf of others similarly

situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates,

P.C., upon their knowledge and belief, and as against East Side Pizza Corp. (d/b/a La Mia Pizza),

Perfecto Pizzeria Corporation (d/b/a Lunetta Pizza), Midtown Pizza Corp. (d/b/a La Vera Pizza),

52 ST Pizza Corp. (d/b/a Little Roma), ("Defendant Corporations"), Richard (a.k.a Richie) Attia,

Hesham M. Attia, Abdellatif Mahmoud, and Khair Muhana, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.     Plaintiffs are former employees of Defendants East Side Pizza Corp. (d/b/a La Mia Pizza), Perfecto Pizzeria Corporation (d/b/a Lunetta Pizza), Midtown Pizza Corp. (d/b/a La Vera Pizza), 52 ST Pizza Corp. (d/b/a Little Roma), Richard (a.k.a Richie) Attia, Hesham M. Attia, Abdellatif Mahmoud, and Khair Muhana.

2.     Defendants own, operate, or control multiple pizzeria restaurants, located at the following locations, 1580 1st Avenue, New York, New York 10028 under the name "La Mia Pizza," at 1162 1st Avenue New York, New York 10065 under the name "Lunetta Pizza," at 922 Second Avenue, New York, New York 10017 under the name "La Vera Pizza," and at 982 2nd Avenue New York, New York 10022 under the name "Little Roma."

3.     Upon information and belief, individual Defendants Richard (a.k.a Richie) Attia, Hesham M. Attia, Abdellatif Mahmoud, and Khair Muhana, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.     Plaintiffs were employed as delivery workers, cooks, as a food preparer, a counter man and as pizza makers at the restaurants located at 1580 1st Avenue, New York, New York 10028, 1162 1st Avenue New York, New York 10065, 922 Second Avenue, New York, New York 10017, and 982 2nd Avenue New York, New York 10022.

5.     Plaintiff Antonio Quirino Ruiz and Plaintiff Alejandro Rojas Martinez were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to washing dishes, food preparing, carrying down and stocking deliveries in the basement, bringing up sodas and other items

the kitchen needed, sweeping and mopping, cleaning the kitchen, cleaning bathrooms, cleaning the basement, cleaning the kitchen fan, taking out the garbage, and twisting and tying up cardboard boxes, (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiffs Rojas and Quirino as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid these Plaintiffs at the tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs Rojas and Quirino at the minimum wage rate and enabled them to pay them at the tipped credit rate.

14.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants

operate multiple pizzeria restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## **PARTIES**

### *Plaintiffs*

20.     Plaintiff Alejandro Rojas Martinez ("Plaintiff Rojas" or "Mr. Rojas") is an adult individual residing in Bronx County, New York.

21.     Plaintiff Rojas was employed by Defendants at La Mia Pizza from approximately November 2012 until on or about November 14, 2019.

22.     Plaintiff Asuncion Albino Castillo ("Plaintiff Albino" or "Mr. Albino") is an adult individual residing in Bronx County, New York.

23.     Plaintiff Albino was employed by Defendants at La Mia Pizza from approximately December 2018 until on or about December 13, 2019.

24.     Plaintiff Braulio Moreno Flores ("Plaintiff Flores" or "Mr. Flores") is an adult individual residing in Bronx County, New York.

25.     Plaintiff Flores was employed by Defendants at La Mia Pizza from approximately December 2012 until on or about December 9, 2019.

26.     Plaintiff Antonio Quirino Ruiz ("Plaintiff Quirino" or "Mr. Quirino") is an adult individual residing in Queens County, New York.

27.     Plaintiff Quirino was employed by Defendants at La Mia Pizza from approximately April 2018 until September 2018, then again in January 2019 and at Little Roma from approximately February 2019 until on or about March 15, 2019.

28.     Plaintiff Obed Dominguez Garcia ("Plaintiff Dominguez" or "Mr. Dominguez") is an adult individual residing in Queens County, New York.

29.     Plaintiff Dominguez was employed by Defendants at La Mia, Lunetta, and La Vera from approximately September 2017 until on or about August 16, 2019.

*Defendants*

30.     At all relevant times, Defendants owned, operated, or controlled multiple pizzeria restaurants, located at 1580 1st Avenue, New York, New York 10028 under the name "La Mia Pizza", at 1162 1st Avenue New York, New York 10065 under the name "Lunetta Pizza", at 922 Second Avenue, New York, New York 10017 under the name "La Vera Pizza", and at 982 2nd Avenue New York, New York 10022 under the name "Little Roma."

31.     Upon information and belief, East Side Pizza Corp. (d/b/a La Mia Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1580 1st Avenue, New York, New York 10028.

32.     Upon information and belief, Perfecto Pizzeria Corporation (d/b/a Lunetta Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1162 1st Avenue New York, New York 10065.

33.     Upon information and belief, Midtown Pizza Corp. (d/b/a La Vera Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 922 Second Avenue, New York, New York 10017.

34.     Upon information and belief, 52 ST Pizza Corp.  (d/b/a Little Roma) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 982 2nd Avenue New York, New York 10022.

35.     Defendant Richard (a.k.a Richie) Attia is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Richard (a.k.a

Richie) Attia is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Richard (a.k.a Richie) Attia possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.     Defendant Hesham M. Attia is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Hesham M. Attia is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Hesham M. Attia possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.     Defendant Abdellatif Mahmoud is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Abdellatif Mahmoud is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Abdellatif Mahmoud possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

38.     Defendant Khair Muhana is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Khair Muhana is sued individually

in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Khair Muhana possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

39.     Defendants operate multiple pizzeria restaurants located in multiple neighborhoods throughout Manhattan.

40.     Individual Defendants, Richard (a.k.a Richie) Attia, Hesham Mc. Attia, Abdellatif Mahmoud, and Khair Muhana, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

41.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

42.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

43.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

44.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

45.     Upon information and belief, Individual Defendants Richard (a.k.a Richie) Attia, Hesham M. Attia, Abdellatif Mahmoud, and Khair Muhana operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed corporations,

    f)  intermingling assets and debts of their own with Defendant Corporations,

    g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

46.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

47.    In each year from 2015 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

48.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

49.    Plaintiffs are former employees of Defendants who were employed as cooks, a food preparer, a counter man, pizza makers and ostensibly as delivery workers.  However, the delivery workers spent over 20% of their shifts performing the non-tipped duties outlined above.

50.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Alejandro Rojas Martinez*

51.    Plaintiff Rojas was employed by Defendants from approximately November 2012 until on or about November 14, 2019.

52.    Defendants employed Plaintiff Rojas as a cook and a food preparer and ostensibly as a delivery worker.

53.    However, when ostensibly hired as a delivery worker from April 2015 to September 2017, Plaintiff Rojas was also required to spend a significant portion of his work day performing the non-tipped duties described above.

54.    Although Plaintiff Rojas ostensibly was employed as a delivery worker from approximately June 2015 until on or about September 2017, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

55.

56.     Plaintiff Rojas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

57.     Plaintiff Rojas's work duties required neither discretion nor independent judgment.

58.     Throughout his employment with Defendants, Plaintiff Rojas regularly worked in excess of 40 hours per week.

59.     From approximately June 2015 until on or about December 2015, Plaintiff Rojas worked as a cook and delivery worker at the 1488 1st Avenue location from approximately 10:00 a.m. until on or about 10:00 p.m., on Mondays, from approximately 4:00 p.m. until on or about 12:00 a.m., Tuesdays, Thursdays and Fridays, and from approximately 2:00 p.m. until on or about 12:00 a.m., Saturdays and Sundays (typically 56 hours per week).

60.     From approximately December 2015 until on or about September 2017, Plaintiff Rojas worked as a cook and delivery worker at the 1488 1st Avenue location from approximately 10:00 a.m. until on or about 10:00 p.m., on Mondays and from approximately 4:00 p.m. until on or about 12:00 a.m., Tuesdays, Thursdays, Fridays, Saturdays and Sundays (typically 52 hours per week).

61.     From approximately September 2017 until on or about August 2019, Plaintiff Rojas worked as a cook at the 1580 1st Avenue location from approximately 5:00 p.m. until on or about 2:00 a.m., Mondays, Tuesdays, and Thursdays, from approximately 5:00 p.m. until on or about 1:00 a.m., Fridays and Saturdays, and from approximately 2:00 p.m. until on or about 1:00 a.m., on Wednesdays (typically 54 hours per week).

62.     From approximately August 2019 until on or about November 14, 2019, Plaintiff Rojas worked as a cook at the 1580 1st Avenue location from approximately 10:00 a.m. until on or about 7:00 p.m., 6 days a week (typically 54 hours per week).

63.     From approximately June 2015 until on or about September 2017, Defendants paid Plaintiff Rojas his wages in cash.

64.     From approximately September 2017 until on or about November 14, 2019, Defendants paid Plaintiff Rojas his wages by check.

65.     From approximately June 2015 until on or about the end of 2016, Defendants paid Plaintiff Rojas $750 per week.

66.     From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Rojas $780 per week.

67.     From approximately January 2018 until on or about November 14, 2019, Defendants paid Plaintiff Rojas $850 per week.

68.     During his employment Plaintiff Rojas also worked for approximately 2 days for which he was not paid any wages either at the straight rate or overtime rate for extra hours of work.

69.     Plaintiff Rojas's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

70.     For example, from approximately June 2015 until on or about September 2019, Defendants required Plaintiff Rojas to work an additional 30 minutes past his scheduled departure time 4 days a week, and did not pay him for the additional time he worked.

71.     Defendants never granted Plaintiff Rojas any breaks or meal periods of any kind.

72.     Plaintiff Rojas was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

73.     Defendants required Plaintiff Rojas to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

74.     On a number of occasions, Defendants required Plaintiff Rojas to sign a document, the contents of which he was not allowed to review in detail.

75.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rojas regarding overtime and wages under the FLSA and NYLL.

76.     Defendants did not provide Plaintiff Rojas an accurate statement of wages, as required by NYLL 195(3).

77.     Defendants did not give any notice to Plaintiff Rojas, in English and in Spanish (Plaintiff Rojas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

78.     Defendants required Plaintiff Rojas to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, and a chain and lock.

*Plaintiff Asuncion Albino Castillo*

79.     Plaintiff Albino was employed by Defendants from approximately December 2018 until on or about December 13, 2019.

80.     Defendants employed Plaintiff Albino as a counter worker.

81.     Plaintiff Albino regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

82.     Plaintiff Albino's work duties required neither discretion nor independent judgment.

83.     Throughout his employment with Defendants, Plaintiff Albino regularly worked in excess of 40 hours per week.

84.     From approximately December 2018 until on or about December 13, 2019, Plaintiff Albino worked from approximately 9:00 A.M. until on or about 6:30 P.M., Sundays through Fridays (typically 57 hours per week).

85.     Throughout his employment, Defendants paid Plaintiff Albino his wages in cash.

86.     From approximately December 2018 until on or about December 13, 2019, Defendants paid Plaintiff Albino $650 per week.

87.     Plaintiff Albino's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

88.     For example, Defendants required Plaintiff Albino to work an additional 15 to 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

89.     Plaintiff Albino was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

90.     On a number of occasions, Defendants required Plaintiff Albino to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

91.     On a number of occasions, Defendants required Plaintiff Albino to sign a document, the contents of which he was not allowed to review in detail.

92.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Albino regarding overtime and wages under the FLSA and NYLL.

93.     Defendants did not provide Plaintiff Albino an accurate statement of wages, as required by NYLL 195(3).

94.     Defendants did not give any notice to Plaintiff Albino, in English and in Spanish (Plaintiff Albino's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Braulio Moreno Flores*

95.     Plaintiff Flores was employed by Defendants from approximately December 2012 until on or about December 9, 2019.

96.     Defendants employed Plaintiff Flores as a pizza maker.

97.     Plaintiff Flores regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

98.     Plaintiff Flores's work duties required neither discretion nor independent judgment.

99.     Throughout his employment with Defendants, Plaintiff Flores regularly worked in excess of 40 hours per week.

100.    From approximately June 2015 until on or about September 2016, Plaintiff Flores worked from approximately 9:00 a.m. until on or about 9:20 p.m., Mondays and Tuesdays and from approximately 9:00 a.m. until on or about 6:20 p.m., Wednesdays through Saturdays (typically 65 hours per week).

101.    From approximately September 2016 until on or about December 09, 2019, Plaintiff Flores worked from approximately 9:00 a.m. until on or about 6:20 p.m., Mondays through Saturdays (typically 59 hours per week).

102.    Throughout his employment, Defendants paid Plaintiff Flores his wages in cash.

103.    From approximately June 2015 until on or about October 2018, Defendants paid Plaintiff Flores a fixed salary of $600 per week.

104.    From approximately November 2018 until on or about December 09, 2019, Defendants paid Plaintiff Flores a fixed salary of $756 per week.

105.    For his last day of work, Defendants did not pay Plaintiff Flores any wages for his work.

106.    Plaintiff Flores's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

107.    For example, Defendants required Plaintiff Flores to work an additional 15 to 20 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

108.    Plaintiff Flores was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

109.    On a number of occasions, Defendants required Plaintiff Flores to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

110.    On a number of occasions, Defendants required Plaintiff Flores to sign a document, the contents of which he was not allowed to review in detail.

111.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Flores regarding overtime and wages under the FLSA and NYLL.

112.    Defendants did not provide Plaintiff Flores an accurate statement of wages, as required by NYLL 195(3).

113.    Defendants did not give any notice to Plaintiff Flores, in English and in Spanish (Plaintiff Flores's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Antonio Quirino Ruiz*

114.    Plaintiff Quirino was employed by Defendants at La Mia Pizza from approximately April 2018 until on or about September 2018, and then again in the month of January 2019. From approximately February 2019 until on or about March 15, 2019 Plaintiff Quirino was employed by Defendants at Little Roma.

115.    Defendants ostensibly employed Plaintiff Quirino as a delivery worker while employed at La Mia and as a cook while employed at Little Roma.

116.    However, Plaintiff Quirino was also required to spend a significant portion of his work day performing the non-tipped duties described above.

117.    Although Plaintiff Quirino ostensibly was employed as a delivery worker while employed at La Mia, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

118.    Plaintiff Quirino regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

119.    Plaintiff Quirino's work duties required neither discretion nor independent judgment.

120.    Throughout his employment with Defendants, Plaintiff Quirino regularly worked in excess of 40 hours per week.

121.    From approximately April 2018 until on or about September 2018, and for the month of January 2019, Plaintiff Quirino worked as a delivery worker at La Mia from approximately 11:00 a.m. until on or about 9:00 p.m., Mondays, Tuesdays, and Thursdays through Sundays, 6 days a week (typically 60 hours per week).

122.    From approximately February 2019 until on or about March 15, 2019, Plaintiff Quirino worked as a cook at Little Roma from approximately 9:00 a.m. until on or about 6:00 p.m., Mondays through Saturdays, 6 days a week (typically 54 hours per week).

123.    Throughout his employment, Defendants paid Plaintiff Quirino his wages in cash.

124.    From approximately April 2018 until on or about September 2018 and for the month of January 2019, Defendants paid Plaintiff Quirino a fixed salary of $350 per week.

125.    From approximately February 2019 until on or about March 15, 2019, Defendants paid Plaintiff Quirino $13.00 per hour.

126.    Plaintiff Quirino's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

127.     For example, Defendants required Plaintiff Quirino to work an additional double shift from Saturday 9:00 a.m. up until 5:00 a.m. Sunday 3 times a month, and did not pay him for the additional time he worked.

128.     Defendants never granted Plaintiff Quirino any breaks or meal periods of any kind.

129.     Plaintiff Quirino was never notified by Defendants that his tips were being included as an offset for wages.

130.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Quirino's wages.

131.     Plaintiff Quirino was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

132.     On a number of occasions, Defendants required Plaintiff Quirino to sign a document, the contents of which he was not allowed to review in detail.

133.     In addition, in order to get paid, Plaintiff Quirino was required to sign a document in which Defendants misrepresented the hours that he worked per week.

134.     Defendants took improper and illegal deductions from Plaintiff Quirino's wages; specifically, at the Little Roma location if Plaintiff arrived late, even if it was for only 10 minutes, he would be docked a full hour's pay.

135.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Quirino regarding overtime and wages under the FLSA and NYLL.

136.     Defendants did not provide Plaintiff Quirino an accurate statement of wages, as required by NYLL 195(3).

137.     Defendants did not give any notice to Plaintiff Quirino, in English and in Spanish (Plaintiff Quirino's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

138.     Defendants required Plaintiff Quirino to purchase "tools of the trade" with his own funds—including bicycle maintenance.

*Plaintiff Obed Dominguez Garcia*

139.     Plaintiff Dominguez was employed by Defendants from approximately September 2017 until on or about August 16, 2019.

140.     Defendants employed Plaintiff Dominguez as a cook.

141.     Plaintiff Dominguez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

142.     Plaintiff Dominguez's work duties required neither discretion nor independent judgment.

143.     Throughout his employment with Defendants, Plaintiff Dominguez regularly worked in excess of 40 hours per week.

144.     From approximately September 2017 until on or about November 2017, Plaintiff Dominguez worked at "La Vera" and at "Lunetta" restaurants as a cook, the number of days he worked at each restaurant varied, but his hours were always the same, from approximately 9:00 a.m. until on or about 7:00 p.m., 6 days per week (typically 60 hours per week).

145.     From approximately November 2017 until on or about August 16, 2019, Plaintiff Dominguez worked exclusively at "La Mia" as a cook from approximately 9:00 a.m. until on or about 7:00 p.m., 6 days a week (typically 60 hours per week).

146.     From approximately September 2017 until on or about February 2019, Defendants paid Plaintiff Dominguez his wages in cash.

147.    From approximately February 2019 until on or about August 16, 2019, Defendants paid Plaintiff Dominguez his wages by personal check.

148.    From approximately September 2017 until on or about April 2019, Defendants paid Plaintiff Dominguez $13.00 per hour.

149.    From approximately April 2019 until on or about August 16, 2019, Defendants paid Plaintiff Dominguez $14.00 per hour.

150.    For approximately four days throughout his employment, Defendants did not pay Plaintiff Dominguez any wages for his hours worked.

151.    Plaintiff Dominguez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

152.    On a number of occasions, Defendants required Plaintiff Dominguez to sign a document, the contents of which he was not allowed to review in detail.

153.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Dominguez regarding overtime and wages under the FLSA and NYLL.

154.    Defendants did not provide Plaintiff Dominguez an accurate statement of wages, as required by NYLL 195(3).

155.    Defendants did not give any notice to Plaintiff Dominguez, in English and in Spanish (Plaintiff Dominguez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

156.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week

without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

157.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

158.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

159.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

160.     Defendants required Plaintiffs Rojas and Quirino and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

161.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

162.     These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

163.     These Plaintiffs and all other tipped workers were incorrectly being paid at the tip credit rate by Defendants.

164.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

165.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

166.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was below the minimum wage rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

167.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

168.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

169.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

170.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

171.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

172.     Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

173.     Defendants paid Plaintiffs their wages in cash or by personal check.

174.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

175.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

176.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

177.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

178.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

179.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the

employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

180.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

181.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

182.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

183.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

184.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

185.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

186.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

187.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

188.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

189.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

190.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

191.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

192.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

193.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

194.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

195.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

196.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

197.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

198.     Plaintiffs were damaged in an amount to be determined at trial.

<u>**FOURTH CAUSE OF ACTION**</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

199.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

200.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff's overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

201.     Defendants' failure to pay Plaintiff's overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

202.     Plaintiffs were damaged in an amount to be determined at trial.

<u>**FIFTH CAUSE OF ACTION**</u>

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

203.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

204.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

205.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

206.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

207.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

208.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

209.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

210.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

211.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

212.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

213.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

214.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

215.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

216.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

217.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

218.     Defendants made unlawful deductions from Plaintiffs' wages; specifically, if a

Plaintiff was 10 minutes late to work a full hour was deducted from Plaintiff's wages.

219.    The deductions made from Plaintiffs' wages were not authorized or required by law.

220.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

221.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

222.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

223.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits

taken against wages;

(m)    Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

June 15, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 20, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Alejandro Rojas Martinez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              20 de noviembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 2, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Asuncion Albino Castillo (a.k.a. Asii)

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              2 de diciembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 20, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Braulio Moreno Flores

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    20 de Noviembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 19, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Obed Dominguez Garcia

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      22 de Agosto 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

May 3, 2021

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Antonio Quirino Ruiz

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              3 de Mayo del 2021

_Certified as a minority-owned business in the State of New York_